UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM YOUNG, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:18-CV-00532-NCC |
| ANDREW M. SAUL,[1] | ) |
| Commissioner of Social Security | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of William Young ("Plaintiff") Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 16) and Defendant has filed a brief in support of the Answer (Doc. 24). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on November 7, 2014 (Tr. 489-90). Plaintiff was initially denied on February 6, 2015 and Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ") on February 13, 2015 (Tr. 421-29). After a hearing, by decision dated January 30, 2017, the ALJ found Plaintiff not disabled (Tr. 302-21). On February

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

14, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through March 31, 2019, and that Plaintiff has not engaged in substantial gainful activity since February 18, 2014, the alleged onset date (Tr. 307). The ALJ found Plaintiff has the severe impairment of degenerative disc disease of the cervical spine, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 307-08). After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 308). He can lift up to 20 pounds occasionally and can lift or carry up to 10 pounds frequently (Tr. 308-09). He can stand and/or walk for about six hours in an eight-hour work day with normal breaks (Tr. 309). He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds (*Id.*). He can occasionally balance, stoop, kneel, and crouch, but can never crawl (*Id.*). He should avoid unprotected heights and exposure to hazardous machinery (*Id.*). The ALJ found Plaintiff not capable of performing any past relevant work but that other jobs exist in significant numbers in the national economy that Plaintiff can perform including retail sales, dining attendant, and loss prevention (Tr. 316-17). Thus, the ALJ concluded that a finding of "not disabled" was

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

appropriate (Tr. 317). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox*, 495 F.3d at 617. Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues that the RFC is not supported by substantial evidence (Doc. 16 at 3-8). Second, Plaintiff asserts that the ALJ erred in failing to properly evaluate the opinion of Dr. Sean Ragain, M.D., Plaintiff's treating physician (*Id.* at 8-12).[3] Third, Plaintiff argues that the ALJ erred in failing to properly apply "the Eighth Circuit pain standard" by failing to provide specific reasons for his evaluation of the credibility of Plaintiff's subjective pain complaints (*Id.* at 12-14). For the following reasons, the Court finds that Plaintiff's arguments are without merit, and that the ALJ's decision is based on substantial evidence and is consistent with the Regulations and case law.

**A. Additional Evidence Submitted to the Appeals Council**

As a preliminary matter, Plaintiff appears to assert that the Appeals Council failed to properly consider medical records submitted after the ALJ's decision (*See* Doc. 16 at 6). Indeed, the Appeals Council must consider additional evidence that is new, material, and related to the period on or before the date of the ALJ's decision as if it was presented to the ALJ. 20 C.F.R. § 404.970(b); *Whitney v. Astrue*, 668 F.3d 1004, 1006 (8th Cir. 2012). Plaintiff submitted records

---

[3] The parties do not dispute that Dr. Ragain is Plaintiff's treating physician (*See* Doc. 16 at 8; Doc. 24 at 7).

5

to the Appeals Council from St. Louis Neurosurgery LLC dated March 5, 2015 and from STL Ear Nose Throat Health dated March 23, 2015 (collectively, the "2015 records") (Tr. 337-44); records from SSM Medical Group dated December 13, 2016 (the "2016 records") (Tr. 322-35); and records from SSM Medical Group dated February 16, 2017 to September 7, 2017, SSM Health St. Clare Fenton dated March 1, 2017 to September 28, 2017, St. Clare Surgery Center dated March 6, 2017 to October 31, 2017, STL Neurosurgery dated March 21, 2017 to September 28, 2017, SSM Physical Therapy dated April 5, 2017 to November 22, 2017, and Christian Hospital dated September 19, 2017 to September 20, 2017 (collectively, the "2017 records") (Tr. 8-297).

The Court finds that the Appeals Council properly addressed this additional evidence. The Appeals Council reviewed the records that pre-date the ALJ's decision, the 2015 records and the 2016 records, and declined to consider these records or exhibit this evidence (Tr. 2). In so doing, the Appeals Council found the 2015 records not to be new because they are a copy of records already in the file (*Id.*). Upon review, the Court finds that the Appeals Council should not have considered these records (*Compare* Tr. 340-44 *with* Tr. 692-93, 695-97). The Appeals Council determined that the 2016 records did not show a reasonable probability that they would change the outcome of the decision (Tr. 2). Indeed, the Court finds the records not to be material because they are largely cumulative of other records of the file as they consist of treatment notes and medication lists from a single visit in December 2016 (Tr. 322-35). While Plaintiff is noted in the records as being positive for back pain, the visit largely entailed medication management and the request for medication refills (Tr. 322, 325). *Hinchey v. Shalala*, 29 F.3d 428, 432-33 (8th Cir. 1994) ("To be material, new evidence must be non-cumulative, relevant, and probative

of the claimant's condition for the time period for which the benefits were denied, and there must be a reasonable likelihood that it would have changed the Secretary's determination.").

The Appeals Council also reviewed the treatment records that post-date the ALJ's decision, the 2017 records, finding them not to relate to the period at issue (Tr. 2). The Appeals Council may be obligated to consider additional evidence that post-dates the ALJ decision, "if it relates to the claimant's condition on or before the ALJ's decision." *Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 2012). Of particular concern to Plaintiff is the March 1, 2017 MRI indicating mild left lateral recess stenosis at L5-S1 and a disc bulge with an annular tear at L4-L5 (Tr. 187). However, the Court finds that the 2017 records do not relate to the disability period as they concern "post decision deterioration of a pre-existing condition." *Eidoen v. Apfel*, 221 F.3d 1342 (8th Cir. 2000) ("Material evidence is evidence that relates to the claimant's condition for the time period for which benefits were denied, and not to after-acquired conditions or post-decision deterioration of a pre-existing condition."). *See also Breyfogle v. Colvin*, No. 2:13-CV-59 CEJ, 2014 WL 4230898, at *10 (E.D. Mo. Aug. 26, 2014) (finding the Appeals Council did not err in giving no consideration to additional evidence concerning plaintiff's lumbar spine because it was not material as it deals with an after-acquired or a deteriorating condition).

**B. Evaluation of Plaintiff's Subjective Complaints**

The Court will next address the consistency of Plaintiff's complaints with the record as the ALJ's evaluation of Plaintiff's symptoms was essential to the determination of other issues, including Plaintiff's RFC.[4] *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by

---

[4] As noted by Defendant, Social Security Ruling 16-3p eliminated the term "credibility" from the analysis of subjective complaints. However, the regulations remain unchanged; "Our regulations on evaluating symptoms are unchanged." SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529, 416.929.

his determination that her allegations were not credible.") (citing *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001). "If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [a court] will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003). *See also Halverson v. Astrue*, 600 F.3d 922, 932 (8th Cir. 2010); *Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006). Plaintiff asserts that the ALJ failed to evaluate the credibility of Plaintiff's subjective pain complaints (Doc. 16 at 12-14). For the following reasons, the Court finds that the reasons offered by the ALJ in support of his analysis of Plaintiff's subjective complaints are based on substantial evidence.

First, the ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of his alleged symptoms not entirely consistent with the medical evidence (Tr. 310). An ALJ may determine that "subjective pain complaints are not credible in light of objective medical evidence to the contrary." *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006). The ALJ supported his conclusion regarding the credibility of Plaintiff's subjective complaints in a thorough review of the medical evidence, encompassing nearly four full pages. The ALJ detailed Plaintiff's impairment history, noting that on February 14, 2014, the alleged

onset date, Plaintiff was admitted to the hospital after a fall (Tr. 310, 590). A CT Scan showed a fracture through the anterior-inferior aspect of the C3 vertebral body and an MRI revealed abnormal signal intensity in the spinal cord from C4-6, paravertebral fluid and edema from C3-5, and degenerative changes at C3-7 (Tr. 310, 585). Plaintiff underwent a C3-4, 6-7 anterior cervical corpectomy and fusion and a C5 corpectomy on February 18, 2014 (Tr. 310, 574, 584-86). Plaintiff was discharged on February 23, 2014, with instructions to continue physical, occupational, and speech therapy and with prescriptions including Medrol DosePak and Norco (Tr. 310-11, 590-91). Plaintiff followed-up with his neurosurgeon Dr. Armond Levy, M.D. ("Dr. Levy") in both March and April of 2014 but was then directed to establish care with a primary care physician and return in six months (Tr. 311, 389, 574-581). *See, e.g.* Tr. 578 ("NEEDS to find PCP for general health maintanence [sic], information given to patient."). Plaintiff established care with a primary care physician, Dr. Sean Ragain, M.D., on November 20, 2014 (Tr. 311, 608-621). At the time, as the ALJ noted, Plaintiff reported chronic pain and numbness in his left arm, both legs and in the groin but was only on Elavil as "he had stopped the Gabapentin and was no longer prescribed narcotic pain medication" (Tr. 311, 609). Dr. Ragain's treatment notes subsequently indicated relatively normal physical examinations (Tr. 311-14, 611, 645, 661. 679, 718, 739). For example, Dr. Ragain repeatedly indicated "grossly normal" musculoskeletal findings (*See, e.g,* Tr. 645). Similarly, by March of 2015, x-rays showed a "fairly solid fusion 3-4, 6-7, progressive fusion 4-6 with stable alignment and hardware, indicating mild to moderate degenerative changes but fairly normal alignment" (Tr. 313; 693). To the extent the Plaintiff identifies records that support Plaintiff's allegations to the contrary, "[i]f substantial evidence supports the decision, then we may not reverse, even if inconsistent

9

conclusions may be drawn from the evidence, and even if we may have reached a different outcome." *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010).

Second, the ALJ also found that Plaintiff "has not generally received the type of medical treatment one would expect for a totally disabled individual" (Tr. 314). Specifically, the ALJ noted that Plaintiff sought treatment primarily from his primary care physician despite instructions to return to his neurosurgeon for follow up (Tr. 314, 739). Further, as indicated by the ALJ, Plaintiff's visits to his primary care physician were routinely scheduled every three months and, by June of 2016, visits were planned every six months (Tr. 314, 739). An ALJ may properly consider Plaintiff's conservative and limited treatment history in his determination of a plaintiff's credibility. *Kamann v. Colvin*, 721 F.3d 945, 950-51 (8th Cir. 2012) (noting that the ALJ properly considered that the claimant was seen "relatively infrequently for his impairments despite his allegations of disabling symptoms"); *Casey v. Astrue*, 503 F.3d 687, 693 (8th Cir. 2007) (noting that the claimant sought treatment "far less frequently than one would expect based on the [symptoms] that [he] alleged").

The ALJ also found that Plaintiff's limited treatment "has been generally successful" in controlling Plaintiff's allegedly disabling symptoms (Tr. 314). Plaintiff testified that he tried injections with minimal success and discontinued them, in part due to cost (Tr. 310, 387). Indeed, the record reflects that Plaintiff's received one injection but that, by June of 2016, only Plaintiff's prescription for Ibuprofen was refilled (Tr. 314, 716, 739). "If an impairment can be controlled by treatment or medication, it cannot be considered disabling." *See Wildman*, 596 F.3d at 965 (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004)). *See also cf. Singh v. Apfel*, 222 F.3d 448, 453 (8th Cir. 2000) (repeated and consistent doctor visits coupled with

many diagnostic tests, taking numerous prescription medications and use of many pain treatment modalities supported claimant's subjective complaints of pain).

Additionally, the ALJ specifically addressed whether Plaintiff suffered any side effects from his medication, finding the Plaintiff "experienced side effects including cotton mouth and drowsiness" (Tr. 310). Plaintiff testified that he experienced "hot mouth, really bad" and drowsiness as side effects from his medication (Tr. 379). In an October 22, 2015 Medical Source Statement, addressed in more detail below, Dr. Sean Ragain indicated that Plaintiff's medication "can cause drowsiness, confusion [and] weakness" (Tr. 638). Therefore, the ALJ properly considered any side effects Plaintiff may have to his medication. *Cf. Noah v. Astrue*, No. 2:10CV56LMB, 2011 WL 4435086 at \*9 (remanding the ALJ's decision, in part, because the ALJ did not explain how plaintiff's testimony regarding his limitations and the side effects of his medications was inconsistent with the record).

Third, the ALJ determined that Plaintiff "failed to follow-up on the recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal" (Tr. 314). Plaintiff's treating physician directed Plaintiff to follow up with his neurosurgeon but Plaintiff did not (Tr. 314, 716). The record also reflects that Plaintiff failed to engage in regular exercise despite his primary care physician recommending that course of treatment (Tr. 314, 716, 739). The ALJ may consider a failure to follow a course of treatment in determining whether a claimant may receive benefits. 20 C.F.R. §§ 404.1530, 416.930 (individual who fails to follow prescribed treatment without a good reason will not be found disabled). *See also Wright v. Colvin*, 789 F.3d 847, 854 (8th Cir. 2015) (affirming where ALJ found that claimant's "credibility suffered from his refusal to take pain medication and his refusal to seek out even conservative treatments such

as physical therapy"); *Wildman*, 596 F.3d at 966 (noncompliance is a basis for discrediting a claimant; when claimant was compliant with dietary recommendations his pain was under good control; claimant's noncompliance with a diet regimen prescribed by doctor contributed to a negative credibility determination).

Finally, while the ALJ did not explicitly address Plaintiff's activities of daily living in relation to his evaluation of Plaintiff's subjective complaints, it is clear from the opinion that the ALJ found Plaintiff's performance of certain tasks to be inconsistent with Plaintiff's reports regarding the intensity, persistence and limiting effects of his symptoms (Tr. 308-10). For example, the ALJ noted that Plaintiff reported he was capable of managing his personal care with some difficulty; remembering to take medication and care for his personal needs; preparing his own meals; driving and going out alone; managing his finances; watching television; visiting with friends and family twice a week; attending sporting events for his children; getting along with friends, family and others; following spoken and written instructions; and using the computer (Tr. 308, 524-31). Plaintiff also testified that, with some limitations, he was capable of managing his personal care; preparing meals; concentrating on television shows; vacuuming; attending sporting events for his children; driving; and shopping with his wife (Tr. 308, 369-70, 381-83, 385-86). Indeed, as noted by the ALJ, Plaintiff reported to the consultative examiner that he was able to cook and dress himself (Tr. 308, 628). *See Vance v. Berryhill*, 860 F.3d 1114, 1121 (8th Cir. 2017) ("[t]he inconsistency between [the claimant's] subjective complaints and evidence regarding [his] activities of daily living also raised legitimate concerns about [his] credibility.").

In conclusion, the Court finds the ALJ evaluation of Plaintiff's subjective complaints is based on substantial evidence and is consistent with Regulations and case law.

**C. Opinion of Treating Physician Dr. Sean Ragain, M.D.**

Plaintiff also asserts that the ALJ erred in failing to properly evaluate the opinion of Dr. Sean Ragain, M.D., Plaintiff's treating physician. *See* 20 C.F. R. §§ 404.1527(c), 416.927(c);[5] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). "A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

The ALJ properly considered the opinion of Dr. Sean Ragain, M.D. ("Dr. Ragain"), Plaintiff's treating physician, affording the opinion "only some weight" (Tr. 315). On October 22, 2015, Dr. Ragain completed a Medical Source Statement in which he opined that Plaintiff was capable of walking one city block, sitting for about two hours total in an eight-hour day, standing and/or walking for less than two hours total in an eight-hour workday, occasionally lifting up to 20 pounds, rarely lifting up to 50 pounds, rarely turning left or right, rarely looking

---

[5] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Plaintiff's claim was filed on November 7, 2014, so the old regulations apply.

13

up, and never using the left upper extremity for fine manipulation (Tr. 638-41). Dr. Ragain further indicated that Plaintiff would require periods of walking around during the workday every 20 to 30 minutes for one to five minutes; the opportunity to shift positions at will from sitting, standing or walking; unscheduled breaks hourly for 15 minutes; and the use of a cane/assistive device for ambulation (*Id.*). The ALJ found Dr. Ragain's opinion to be generally consistent with the medical evidence except that his restrictions regarding sitting, standing, handling, fingering and walking were not consistent with the objective medical evidence (Tr. 315). Specifically, the ALJ noted that these restrictions are not supported in Dr. Ragain's contemporaneous office or progress notes, again noting the largely absent clinical and laboratory abnormalities in the record and the relatively conservative course of treatment pursued by Dr. Ragain (*Id.*).

The ALJ properly considered that Dr. Ragain's opinion was inconsistent with the record as a whole and his own treatment notes. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion."); *Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (An ALJ may properly discredit a treating physician's opinion when the limitations provided on the medical source statement are inconsistent with the physician's own treatment notes). As detailed extensively above, physical exams in the record were generally normal, Plaintiff's treatment was conservative in nature, and the limited, conservative treatment was largely effective in controlling his symptoms. Of note, and also addressed thoroughly above, Dr. Ragain noted generally normal physical findings (Tr. 314, 611, 645, 661, 679, 718, 739).

Although the ALJ did not address all of the non-controlling factors found in 20 C.F.R. §§ 404.1527(c), 416.927(c), the ALJ is not required to cite specifically to the regulations but

14

need only clarify whether he discounted the opinions and why. *Kientzy v. Colvin*, No. 4:15CV707 JMB, 2016 WL 4011322, at *8 (E.D. Mo. July 27, 2016) (citing *Grable v. Colvin*, 770 F.3d 1196, 1201-02 (8th Cir. 2014)). Accordingly, the ALJ properly offered a sufficient basis to give the opinion "non-*substantial* weight" in addition to "[non-]*controlling* weight." *Milam*, 794 F.3d at 983; *Papesh*, 786 F.3d at 1132 (emphasis in original) (internal citations omitted) (finding error when the ALJ offered no basis to give an opinion non-substantial weight; "For example, the ALJ did not find the opinion inconsistent with the record or another [of the physician's own] opinion[s].").

**D. RFC**

Finally, Plaintiff argues that the RFC is not supported by substantial evidence (Doc. 16 at 3-8). Regulations define RFC as "what [the claimant] can do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). "The ALJ must assess a claimant's RFC based on all relevant, credible evidence in the record, 'including the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) (quoting *McKinney*, 228 F.3d at 863). *See also Myers v. Colvin*, 721 F.3d 521, 526 (8th Cir. 2013). To determine a claimant's RFC, the ALJ must move, analytically, from ascertaining the true extent of the claimant's impairments to determining the kind of work the claimant can still do despite his or her impairments. *Anderson v. Shalala*, 51 F.3d. 777, 779 (8th Cir. 1995). "Although it is the ALJ's responsibility to determine the claimant's RFC, the burden is on the claimant to

15

establish his or her RFC." *Buford v. Colvin*, 824 F.3d 793, 796 (8th Cir. 2016) (internal citations omitted).

The Eighth Circuit clarified in *Lauer* that "[s]ome medical evidence . . . must support the determination of the claimant's RFC, and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace[.]" 245 F.3d at 704 (quoting *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam) and *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000)). Thus, an ALJ is "required to consider at least some supporting evidence from a professional." *Id. See also Vossen v. Astrue*, 612 F.3d 1011, 1016 (8th Cir. 2010) ("The ALJ bears the primary responsibility for determining a claimant's RFC and because RFC is a medical question, some medical evidence must support the determination of the claimant's RFC."); *Eichelberger*, 390 F.3d at 591.

As previously discussed, the ALJ determined Plaintiff has the RFC to perform light work with the following limitations (Tr. 308). He can lift up to 20 pounds occasionally and can lift or carry up to 10 pounds frequently (Tr. 308-09). He can stand and/or walk for about six hours in an eight-hour work day with normal breaks (Tr. 309). He can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds (*Id.*). He can occasionally balance, stoop, kneel, and crouch, but can never crawl (*Id.*). He should avoid unprotected heights and exposure to hazardous machinery (*Id.*).

The Court finds the ALJ's RFC determination was based on substantial evidence. Specifically, as addressed in significant detail above, the ALJ properly evaluated Plaintiff's subjective complaints and the medical opinion of Dr. Ragain. In doing so, the ALJ conducted a complete and detailed analysis of Plaintiff's medical record and activities of daily living. The ALJ also addressed the other opinion evidence of record.

First, the ALJ considered the opinion of Dr. Kenneth R. Smith, M.D. ("Dr. Smith"), the state agency medical consultant, finding it entitled to "some weight" (Tr. 314). In a residual functional capacity assessment dated January 27, 2015, Dr. Smith found Plaintiff capable of lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking for about six hours in an eight-hour workday; sitting for more than six hours in an eight-hour workday; occasionally climbing ramps, stairs, ladders, ropes and scaffolds; and occasionally balancing, stooping, kneeling, crouching and crawling (Tr. 409-11). The ALJ found the opinion to be consistent with the record as a whole and supportive of the residual functional capacity (Tr. 315). *See* 20 C.F.R. §§ 404.1513a(b)(1); 416.913a(b)(1) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); *Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016) ("The state agency physicians' opinions were consistent with the other medical evidence and it was proper for the ALJ to rely on them, in part, in formulating [the plaintiff's] RFC."); *Kamann v. Colvin*, 721 F.3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments).

Second, the ALJ considered the April 21, 2014 form provided to Plaintiff's union, finding it entitled to "no weight" (Tr. 315). The form indicates that Plaintiff was "totally and permanently disabled and his/her disability is of such a nature that it is expected to be permanent and continuous for the balance of his/her lift and that (s)he will no longer be able to work as a Laborer or as employed immediate to disability" (Tr. 572). The signature on the form is illegible (*See* 572). The ALJ discounted the form because it "does not provide specific medical evidence on which the determination was based" (Tr. 315). "An absence of clinical findings supports the

17

rejection of a physician's opinion as to physical limitations." *Boyd v. Colvin*, 831 F.3d 1015, 1021 (8th Cir. 2016). *See also Kaeder v. Berryhill*, No. 17-CV-1858 (HB), 2018 WL 4286412, at *5 (D. Minn. Sept. 7, 2018) ("An ALJ may discount a medical opinion that does not contain or refer to objective medical evidence, clinical findings, or specific work restrictions.") (citing 20 C.F.R. § 404.1527(c)(3)). Further, the ALJ correctly found that the determination whether an individual is disabled under the Social Security Act rests exclusively with the Commissioner (Tr. 315). A physician's opinion that a claimant is incapable of gainful employment is often not entitled to significant weight. *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1116 (8th Cir. 2008)); 20 C.F.R. §§ 404.1527(d), 416.927(d) ("A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."). Finally, the ALJ noted that a decision by any other nongovernmental organization about disability is based on that organization's rules and is not binding on the Social Security Administration (Tr. 315). *See* 20 C.F.R. § 404.1504.

In addition to reviewing and properly considering the other opinion evidence of record, the ALJ also evaluated the report from Plaintiff's consultative examination on January 2, 2015 with Dr. Arjun Bhattacharya, M.D. ("Dr. Bhattacharya") (Tr. 312-13, 627-35). Dr. Bhattacharya completed a physical examination, finding, as acknowledged by the ALJ, "severe restriction of range of movement in the neck in all directions" (Tr. 312, 629). However, the remainder of the report indicates largely normal findings—normal motor function including fine and dexterous finger control; no motor disabilities identified; normal gait; and no difficulty getting on and off the exam table (Tr. 312, 627-35). As correctly noted by Defendant and indicated by the ALJ, Dr. Bhattacharya did not opine any work-related functional limitations (Tr. 313, 627-35). As such, the ALJ was not required to consider the report as a medical opinion. 20 C.F.R. § 404.1527 (a

medical opinion is a statement that includes "your physical or mental restrictions").  Regardless, it is clear from the ALJ's decision that he thoroughly and properly considered Dr. Bhattacharya's report (Tr. 312-13).

In conclusion, the Court finds that the ALJ's RFC determination is consistent with the relevant evidence of record including the objective medical evidence, the observations of medical providers, as well as the evaluation of Plaintiff's subjective complaints.

## V. CONCLUSION

For the reasons set forth above, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 24th day of September, 2019.

   /s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE